United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2004

Charles R. Fulbruge III
Clerk

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

No. 03-50985

---

D.C. Docket No. SA-00-CV-34

**FILED**
FEB 28 2005
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

JAVIER PEREZ

        Plaintiff - Appellee

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION

        Defendant - Appellant

Appeal from the United States District Court for the
Western District of Texas, San Antonio.

Before SMITH and GARZA, Circuit Judges, and VANCE*, District Judge.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is vacated, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.


ISSUED AS MANDATE: FEB 24 2005

---

*District Judge of the Eastern District of Louisiana, sitting by designation.

A true copy
Test
Clerk, U. S. Court of Appeals, Fifth Circuit
By_Sabrina_____
Deputy

New Orleans, Louisiana  FEB 24 2005

United States Court of Appeals
Fifth Circuit

F I L E D

December 21, 2004

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 03-50985

JAVIER PEREZ,

       Plaintiff-Appellee,

versus

TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

       Defendant-Appellant

Appeal from the United States District Court
For the Western District of Texas

Before SMITH and GARZA, Circuit Judges, and VANCE*, District Judge.

EMILIO M. GARZA, Circuit Judge:

  A jury returned a verdict in favor of Javier Perez in his employment discrimination action against his former employer, the Texas Department of Criminal Justice ("TDCJ"). Claiming that the district court erroneously excluded evidence, misinstructed the jury and improperly denied its motion for judgment as a matter of law, TDCJ appeals.

  Perez was a lieutenant at the TDCJ's Connally Unit. In August, 1996 Perez was arrested and charged with felony assault for the off-duty stabbing of a fellow patron of Little Joe's Bar in

---

  * District Judge of the Eastern District of Louisiana, sitting by designation.

Victoria, Texas. The victim, Santiago Ramos, was a former inmate at the Connally Unit.

Shortly after the stabbing incident Perez informed his supervisor, Warden Dayton Poppell, of his arrest. Despite a *Garrity* warning, however, Perez refused to discuss the incident except to proclaim his innocence.[1] After cautioning Perez that agency policy required that he give a statement and that failure to cooperate could result in disciplinary action, Poppell referred the matter to Internal Affairs for investigation.[2] The resultant Internal Affairs report (the "IA Report") concluded that Perez had violated agency rules by engaging in conduct that jeopardized the integrity of the agency. Under agency guidelines, such a finding required a termination recommendation. After reviewing the IA Report and conducting a disciplinary hearing in which Perez, on advise of counsel, again refused to discuss the stabbing incident, Poppell recommended termination. Perez was discharged.[3] The criminal charges against Perez were later dismissed, apparently because Ramos would not cooperate.

Perez brought a claim under Title VII of the Civil Rights Act of 1964, which makes it unlawful for an employer to discharge an employee because of his race. *See* 42 U.S.C. § 2000e-2(a). Perez's claim relied primarily on a disparate treatment theory; he claimed that TDCJ had treated him more harshly than similarly situated non-Hispanic employees. *See Wallace v. Methodist Hosp. Sys.*,

---

[1] Under *Garrity v. New Jersey*, 385 U.S. 493, 497 (1967), statements made by a police officer under threat of termination generally cannot be used against him in a subsequent criminal trial. *See also Gulden v. McCorkle*, 680 F.2d 1070, 1073 (5th Cir. 1982) (statements compelled by threat of termination cannot be used in subsequent criminal trial).

[2] The Internal Affairs Division is an independent investigative arm of the Texas Board of Criminal Justice.

[3] Perez's father, a fellow corrections officer at the Connally Unit, was also arrested for the stabbing incident and terminated by TDCJ. He is not, however, a party to this case.

2

271 F.3d 212, 220 (5th Cir. 2001) (explaining that an employee may rebut a non-discriminatory explanation for termination with evidence of disparate treatment of *similarly situated* employees). The jury agreed with Perez, finding that TDCJ had discriminated against Perez because of his race.

On appeal, TDCJ contends that the district court erred in: (1) excluding certain evidence relating to Perez's involvement in the stabbing; (2) misinstructing the jury on the standard for determining whether TDCJ treated Perez more harshly than similarly-situated non-Hispanic employees; and (3) denying TDCJ's renewed motion for judgment as a matter of law ("JMOL"). We consider the issues in the order they presented themselves at trial, beginning with the district court's evidentiary rulings.

I

TDCJ argues that the district court erred in (1) prohibiting cross-examination of Perez about his guilt in the underlying stabbing and (2) excluding the contents of the IA report that prompted the termination recommendation.[4] "The trial court's discretion to admit or exclude evidence is generally broad, but competent evidence cannot be excluded without a sound and acceptable reason." *Davidson Oil Country Supply Co. v. Klockner, Inc.*, 908 F.2d 1238, 1245 (5th Cir. 1990). We review the trial court's evidentiary rulings only for abuse of discretion. *Kelly v. Boeing Petroleum Servs.*, 61 F.3d 350, 356 (5th Cir. 1995). An erroneous evidentiary ruling is reversible error only if the ruling affects a party's substantial rights. *Id.* at 361.

The district court permitted TDCJ to cross-examine Perez about his arrest, his call to Poppell after the arrest and his refusal, on advise of counsel, to discuss the incident with either Poppell or

---

[4] While our ruling, *infra*, that the district court erroneously instructed the jury requires that we vacate the judgment, we nevertheless address the evidentiary issues because they are likely to present themselves again in any retrial of Perez's discrimination claim.

3

the Internal Affairs investigator. But, the district court prohibited TDCJ from questioning Perez about his actual involvement in the stabbing, sustaining Perez's objection that what happened at Little Joe's Bar was irrelevant. TDCJ argues that the district court erred in so limiting its examination of Perez. We disagree.

To be admissible, evidence must be relevant. *See* FED. R. EVID. 401. In determining whether Perez was treated differently from similarly situated employees because of his race, the issue is whether Perez and his alleged comparator employees were similarly situated from the perspective of their employer at the time of the relevant employment decisions. *Cf. Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771, 774 (11th Cir. 1985) ("[F]ailure to promote a plaintiff because the person actually promoted was more qualified is a nondiscriminatory reason, but the articulation of that reason must include the fact that the decision-maker knew that the promoted individual's qualifications were superior at the time the decision was made."); *Sabree v. United Bhd. of Carpenters and Joiners Local No. 33*, 921 F.2d 396, 404 (1st Cir. 1990) (emphasizing the importance of focusing on the employers rational at the time of the decision rather than *post hoc* rationalizations). Thus, the evidence relevant to determining whether TDCJ treated Perez differently because of his race is evidence that goes to what Poppell knew at the time he ordered the IA investigation and recommended Perez's termination. Examination of Perez about what actually happened the night of the stabbing, as distinct from what he told Poppell and the IA investigator about what happened, could not have added anything relevant to that inquiry.[5] *See Patrick v. Ridge,*

---

[5] TDCJ also argues that it should have been permitted to cross-examine Perez about his involvement in the stabbing because Perez proclaimed his innocence on the stand and the court's refusal to permit cross-examination left the jury with the impression that Perez was fired for something he did not do. In fact, Perez testified only that he *told the warden*, after his arrest, that he was innocent and had hired a lawyer. Perez never testified at trial that he was innocent.

4

No. 04-10194, 2004 WL 2898068 (5th Cir. December 15, 2004) ("As the ultimate issue is the employer's reasoning *at the moment* the questioned employment decision is made, a justification that *could not* have motivated the employer's decision is not evidence that tends to illuminate this ultimate issue and is therefore simply irrelevant. . . .") (emphasis in the original). Moreover, even if Perez's testimony about his involvement in the stabbing somehow met the low threshold for relevance, its minimal probative value would have been outweighed by the danger of confusion and prejudice. *See* FED. R. EVID. 403.

TDCJ also appeals the district court's exclusion of the contents of the IA Report. Unlike Perez's proposed testimony, the IA Report goes to the basis for Poppell's termination recommendation and is thus relevant. *See* FED. R. EVID. 401. The district court stated that it was excluding the report because admitting it would drag out the trial and require going into the details of each employee's criminal conduct. The court also suggested that TDCJ did not need the IA Report to show that Perez had been uncooperative because it had already introduced other testimony to that effect. We take these statements to mean that the court excluded the IA Report as cumulative and a waste of time. *See* FED. R. EVID. 403.

We need not decide whether the district court erred in excluding the contents of the IA report because, even assuming the exclusion was erroneous, we are not persuaded that the exclusion affected TDCJ's substantial rights. *See EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1093 (5th Cir. 1994) (holding that to vacate a judgment based on an erroneous evidentiary ruling, the court must

---

Moreover, the jury heard testimony that Perez's guilt was never adjudicated, that the charges were dropped only because the victim disappeared and that IA investigator found sufficient evidence to believe Perez guilty. Thus, there is no support for TDCJ's argument that the jury was left with the impression that Perez was fired for something he did not do.

5

find that the erroneous ruling affected the substantial rights of the parties).

At trial and again on appeal, TDCJ argues that the IA Report should be admitted because it showed the basis for Poppell's termination recommendation. But the district court did admit into evidence the IA Report's conclusion that Perez's off-duty conduct undermined the integrity of the agency, which under TDCJ's own theory of the case required Poppell's termination recommendation.[6] Moreover, TDCJ points to no portion of the record in which Perez denies that, under agency policy, the IA Report's conclusion required a termination recommendation.[7] Thus, the exclusion of the IA Report's contents did not prevent TDCJ from establishing that Poppell's termination recommendation was required in light of the IA Report's conclusion. Nor was TDCJ prevented from establishing that Perez refused to cooperate with the Poppell or the IA investigator, since both Poppell and the investigator testified to that effect at trial. In sum, TDCJ has not shown a reasonable likelihood that the exclusion affected its substantial rights. *See Johnson v. William C. Ellis Sons Iron Works, Inc.*, 609 F.2d 820, 823 (5th Cir. 1980) (stating that "if there is a reasonable likelihood that a substantial right was affected, we should not find the error harmless.").

II

The crux of this case, however, is not the evidentiary rulings discussed in Part I, *supra*, but rather the undergirding legal standard to which that evidence must be applied. TDCJ argues that the district court misinstructed the jury on the legal standard for determining whether the employees to

---

[6] TDCJ's states that, "[f]or a Level One violation such as Internal Affairs found, there is no other recommendation warden Poppell could have made consistent with agency policy." Appellant's Brief at 15.

[7] Indeed, TDCJ states in its brief that Perez "conceded at trial that warden Poppell made the only decision he could make, given the Internal Affairs finding." Appellant's Brief at 15.

6

whom Perez sought to compare himself were in fact similarly situated. In relevant part, the trial court instructed the jury that,

> To establish discrimination by using indirect evidence in this case, the plaintiff must prove by a preponderance of the evidence that one or more *similarly situated* non–Hispanic employees who engaged in criminal activity were treated more favorably. In comparing the nature of the offense at issue and the nature of the discipline imposed, the quantity and quality of *the other employees' misconduct must be of comparable seriousness* to the misconduct of the plaintiff.

(emphasis added). TDCJ argues that the "comparable seriousness" language, without more, instructed the jury to apply too lenient a standard in determining whether the employees being compared were similarly situated because it suggested that the jury should focus solely on the seriousness of the employees' misconduct rather than the comparability of their overall circumstances.[8]

"The district court has broad discretion in formulating the jury charge, and we therefore review [its] instructions with deference." *Deines v. Tex. Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999). TDCJ must show that the instruction creates a "substantial and ineradicable doubt whether the jury [was] properly guided in its deliberations." *Id.* (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995). We will not reverse even an erroneous instruction if, upon review of the "entire record, the challenged instruction could not have affected the outcome of the case." *Id.*

The district court took the "comparable seriousness" requirement in the above quoted jury

---

[8] TDCJ filed a written pre-trial objection on this basis and proposed a replacement instruction. TDCJ renewed its objection at trial and the court ruled. Thus, contrary to Perez's argument on appeal, TDCJ preserved the issue for appeal. *See Taita Chem. Co. v. Westlake Styrene, LP*, 351 F.3d 663, 667 (5th Cir. 2003).

instruction from the Supreme Court's decision in *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976). In *McDonald*, white and black employees were accused of stealing a shipment of antifreeze from their employer, Santa Fe Trail Transportation Co. ("Santa Fe"). *Id.* at 275. Santa Fe terminated the white employees but not the black employee. *Id.* at 275-76. In a footnote, the Supreme Court rejected Santa Fe's contention that the plaintiff-white employees were required to plead with particularity the degree of similarity in culpability. The Court explained, "precise equivalence in culpability between employees is not the ultimate question: as we indicated in *McDonnell Douglas*, an allegation that other 'employees involved in acts against (the employer) of *comparable seriousness*...were nevertheless retained...' is adequate to plead an inferential case that the employer's reliance on his discharged employee's misconduct as grounds for terminating him was merely a pretext." *Id.* at 283 n.11 (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 804 (1973) (emphasis added) (ellipses in the original).

In instructing the jury *only* that the employees' underlying misconduct must be comparably serious, the district court failed to take into account the important factual and procedural distinctions between *McDonald* and the present case. In *McDonald*, the employees in question were all participants in the same theft. *Id.* at 282. Aside from race, the only arguable distinction between them was their degree of culpability. In addressing the pleading standard under the *McDonnell Douglas* burden-shifting analysis on *McDonald's* facts, the Supreme Court did not intend to articulate, nor did it, the entirety of the plaintiff-employee's burden of proof in cases where, as here, the plaintiff-employee seeks to compare his own treatment to that of employees involved in unrelated but arguably similar misconduct.

We, however, have specifically addressed the plaintiff-employee's burden of proof in

8

disparate treatment cases involving separate incidents of misconduct and have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been "nearly identical." *See Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991). *See also Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (*per curiam*).

In *Smith*, a Wal-Mart employee claimed that she was terminated for violating the company's fraternization policy while a male employee was not terminated for a similar violation of company policy. This court explained that "[i]n order for her claim of disparate treatment to succeed under Title VII, Smith would have to show that [the male employee] and she had been similarly situated. To this end Smith's burden is to show 'that the misconduct for which she was discharged was nearly identical to that engaged in by a male employee whom [the company] retained.'" *Id.* (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. Unit B 1982) (internal citation omitted) (third alteration in the original).

In *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296 (5th Cir. 2000) the plaintiff argued that his employer terminated him for rude and abusive conduct but did not terminate a younger employee for similar behavior. We held that in order to establish a claim of disparate treatment the plaintiff-employee had to show that he was treated differently "under 'nearly identical' circumstances." *Id.* at 304 (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). We then found that the striking differences between the two men's situations more than accounted for the differential treatment they had received. *Id.* at 305.

Likewise, in *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086 (5th Cir. 1995) we explained that a black plaintiff-employee claiming disparate treatment of white employees had to show that the white employees were treated differently "under circumstances 'nearly identical' to his." *Id.* at 1090

9

(quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). *See also Wallace*, 271 F.3d at 221 (summarizing our case law requiring that the comparator employees' circumstances and misconduct be "nearly identical" to that of the plaintiff-employee); *Barnes v. Yellow Freight Sys. Inc.*, 778 F.2d 1096, 1101 (5th Cir. 1985) (holding that a presumption of discriminatory intent is raised for purposes of a disparate treatment claim where "a supervisor of one race treats employees of the same race more favorably than similarly situated employees of another race under circumstances that are essentially identical.").

In instructing, without more, that the employees' underlying misconduct must be comparably serious, the district court erroneously suggested that comparably serious misconduct was by itself enough to make employees similarly situated. A correctly worded instruction would have made clear that the jury must find the employees' circumstances to have been nearly identical in order to find them similarly situated.

Having found the jury instruction erroneous, we must determine whether the error could have affected the outcome of the case. *See Deines*, 164 F.3d at 279. In support of his disparate treatment claim, Perez pointed to two fellow corrections officers as comparator employees. The first, Shannon Clover ("Clover"), was a lieutenant at another TDCJ unit when he was arrested for involuntary manslaughter. Clover was driving under the influence of alcohol when he struck another vehicle, killing the driver. He ultimately pled guilty to misdemeanor driving while intoxicated. Clover transferred to Poppell's unit after his arrest but before his guilty plea. Under agency rules, conviction of a misdemeanor is a "Level Four" violation, for which an employee may not be terminated. Clover was reprimanded and placed on probation. No Internal Affairs investigation was initiated while the charges against Clover were pending.

10

Perez's second comparator employee, Arlen Parma ("Parma"), and his brother were employees at another TDCJ unit when they initiated a drunken assault of their mother's boyfriend. Parma entered into a plea bargain and received deferred adjudication. Like Clover, Parma was transferred to Poppell's unit after his arrest and, like Clover, no Internal Affairs investigation of the incident was initiated while the charges against Parma were pending. At the subsequent disciplinary hearing, Poppell reprimanded Parma for conviction of a misdemeanor.

Poppell, who ordered the IA investigation and recommended that Perez be terminated, conceded at trial that Perez, Parma and Clover were accused of comparably serious crimes and that Parma and Clover were nevertheless treated more leniently than Perez. Given the jury instruction's focus on comparable seriousness and Poppell's testimony, there can be little surprise that the jury returned a verdict in favor of Perez.

Properly instructed, however, the jury could have concluded that Poppell's testimony, even if taken as conceding the seriousness issue, was not dispositive on the question of whether the comparator employees were similarly situated. This is because TDCJ presented a number of other potentially significant distinctions between Perez, Parma and Clover's respective circumstances. Specifically, TDCJ argued that only Perez had refused to explain his actions in response to TDCJ inquiries and that only Perez was accused of assaulting an ex-inmate. Regarding the involvement of a former inmate, Poppell testified that he was concerned that an assault on an ex-inmate might suggest illegal activity within the prison.[9] These factors, TDCJ claimed, explained why an IA

---

[9] TDCJ had earlier investigated Perez for involvement in the Mexican Mafia, but IA could not substantiate the rumors that prompted the investigation.

11

investigation was initiated for Perez but not Clover and Parma.[10] The need to initiate an Internal Affairs investigation in turn explained the differences in punishment, TDCJ contended, since under agency policy the IA Report's conclusion that Perez had engaged in off-duty conduct that undermined the integrity of the agency required a termination recommendation.

The distinctions proffered by TDCJ, while seemingly not relevant under the rubric of comparable seriousness, could be relevant to the question of whether Perez, Parma and Clover's respective circumstances were nearly identical. Because a jury applying the correct legal standard could have found TDCJ's proffered distinctions significant, we cannot say that the district court's instruction prohibiting their consideration could not have affected the outcome of the case.

III

Finally, TDCJ argues that the district court erred in denying its renewed JMOL motion pursuant to FED. R. CIV. P. 50. TDCJ contends that the evidence conclusively proves that the employees' circumstances were not nearly identical and that TDCJ lacked discriminatory intent.[11]

We review the district court's denial of a renewed JMOL motion *de novo*. *Travis v. Bd. of Regents of Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997). This court must review the entire record, "drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S.

---

[10] TDCJ also argued that the employees worked under different supervisors at the time of their arrests and that it would have been unusual for Poppell to initiate Internal Affairs investigations of Parma and Clover when their original supervisors had not initiated investigations.

[11] TDCJ also argues that it conclusively established an affirmative defense, but it waived this issue by failing to object to the absence of a jury charge. *See McDaniel v. Anheiser Busch, Inc.*, 987 F.2d 298, 306 (5th Cir. 1993) (pretrial request for instructions is ordinarily insufficient to preserve error).

133, 135 (2000). Thus, although we must review the record as a whole, we "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* Reviewing the record in this light, TDCJ's JMOL motion should be granted if "the facts and inferences point so strongly in favor of [TDCJ] that a rational jury could not arrive at a contrary verdict." *Waymire v. Harris County,* 86 F.3d 424, 427 (5th Cir. 1996) (quoting *London v. MAC Corp. of Am.,* 44 F.3d 316, 318 (5th Cir. 1995)).

Considering all evidence and construing all reasonable inferences in the light most favorable to Perez, we do not find that the facts and inferences point so strongly in favor of TDCJ that a rational jury, properly instructed, could not return a verdict in favor Perez. Poppell was at times equivocal in his testimony about the significance of the distinction between an assault on a former inmate and an assault on a member of the public. Similarly, Perez's counsel sought to impeach Poppell's testimony that Perez was less cooperative than Parma and Clover by reference to Poppell's pre-trial statements on the issue. Given the disputed testimony, we cannot say that a reasonable jury could not have found Perez, Parma and Clover similarly situated. A jury finding that Perez, Parma and Clover were treated differently despite being similarly situated could therefore find that TDCJ discriminated against Perez because of his race. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993) ("rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination.") (emphasis in the original).

## IV

We hold that the district court erroneously instructed the jury on the law and that this erroneous instruction could have affected the outcome of the trial. Accordingly, we VACATE the district court's judgment and REMAND the case for further proceedings consistent with this opinion.

13

Case 5:00-cv-00034-FB   Document 126   Filed 02/28/05   Page 15 of 15

14